UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

RODNEY BROWN,

                              Plaintiff,

       vs.                                              9:08-CV-200
                                                               (GLS/ATB)

J. WHITE,

                              Defendant.

_____

RODNEY BROWN, Plaintiff pro se
DEAN J. HIGGINS, AAG, Attorney for Defendant

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

      This matter has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Gary L. Sharpe, United States District Judge.

      In this amended civil rights complaint, plaintiff alleges that defendant denied him adequate medical care, in violation of the Eighth Amendment, from October 11, 2007 until January 15, 2008, while plaintiff was an inmate in the custody of the Franklin Correctional Facility ("Franklin").  (Dkt. No. 10).  The defendant also construes the amended complaint as alleging that she retaliated against the plaintiff for demanding necessary medical care by lodging an unfounded misbehavior report against him.  Plaintiff seeks unspecified monetary damages.

      Presently before this court is the motion for summary judgment, pursuant to FED. R. CIV. P. 56, filed by the sole defendant, J. (Jerre) White, a nurse at Franklin.

(Dkt. No. 44).  Plaintiff filed an unsworn response which did not include a memorandum of law, affidavit, or response to the defendant's statement of material facts, as required by Local Rule 7.1(a). (Dkt. No. 48).  For the following reasons, this court recommends that the defendant's motion for summary judgment be granted and the complaint dismissed in its entirety.

## DISCUSSION

### I.   Facts

Plaintiff alleges that on February 27, 2007, he suffered head and lower back injuries due to a "slip and fall" at the Riker's Island Correctional Facility (Riker's Island).  Plaintiff states that he received medical treatment from, *inter alia*, a neurologist at Bellevue Hospital.  Plaintiff was eventually transferred to Franklin on September 7, 2007 and initiated several sick-call visits to seek further treatment for the injuries purportedly resulting from the prior accident. (Amended Complaint (AC), Dkt. No. 10 at 7; Supplemental Ex. to AC, Dkt. No. 12 at 1).

The Declaration of Nancy Armstrong[1] filed in support of the defendant's motion for summary judgment and related medical records (Ex. B, Dkt. No. 44-5) establish that the plaintiff was examined by the medical staff at Franklin upon his arrival on September 7, 2007, and by sick-call nurses on September 17, October 7, and October 9, 2007.[2] (Dkt. No. 44-12 & Ex. B, Dkt. No. 44-5).  The report of plaintiff's initial

_____

[1] Nancy Armstrong is the Nurse Administrator at Franklin and is not a defendant in this action. (Armstrong Decl., Dkt. No. 44-12, ¶ 2).

[2] In his deposition, plaintiff admits setting up sick call visits at Franklin on multiple occasions.  (Ex. F., Dkt. No. 44-9 at 15, 19).  (Page numbers cited for Ex. F, plaintiff's

medical screening at Franklin indicates that he claimed to have "left back problems" resulting from a fall in February 2007; but the medical records at Franklin did not include prior documentation of the Riker's Island accident. (Armstrong Decl.  ¶ 3; Ex. B at 27).  On September 17, 2007, the medical staff scheduled an appointment for the plaintiff with a doctor to address his medical complaints, provided ibuprofen and an analgesic balm, and instructed the plaintiff to use moist heat to address his lower back pain. (Armstrong Declaration, ¶¶ 8,9; Ex. B at 27).[3]

On October 9, 2007, plaintiff again complained of pain in his back and elsewhere. (Armstrong Declaration, ¶ 11; Ex. B at 26).  An examination by a nurse of his back was negative, although the plaintiff was having slight difficulty bending at the waist. *Id.* The plaintiff refused Ibuprofen and stated that he would "take all of" whatever medication the nurse would give him. (Armstrong Decl. ¶ 13).  Because the nurse was concerned that plaintiff would not take the medication as prescribed, and because he still had a doctor's appointment scheduled, she did not issue plaintiff the

---

deposition are the transcript page numbers, not the numbers assigned and printed in the CM-ECF header.  Similarly, the page number for medical records in Ex. B are the page numbers printed by the Attorney General's Office in the bottom right-hand corner, not the CM-ECF page numbers. Otherwise, page number cited for the record those assigned in the CM-ECF header.)

[3] During his September 17th visit, plaintiff advised the nurse that he had previously been provided more potent pain killers–Tylenol 3 and Percocet.  (Armstrong Decl. (refers to "Percodan") ¶ 9; Ex. B at 27 (refers to "Percocet")).  In his deposition, the plaintiff mentioned, at least twice, that he was prescribed Percocet and Tylenol-3 with codeine by medical staff before he arrived at Franklin.  (Ex. F., Dkt. No. 44-9 at 8, 12, 14).   (According to the DailyMed website, a service of the National Library of Medicine of the National Institutes of Health: (1) Percocet is a medication that combines oxycodone hydrochloride and acetaminophen–*see* http://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?id=13307; (2) Percodan combines the same active ingredient, oxycodone hydrochloride, with aspirin–*see* http://dailymed.nlm.nih.gov/ dailymed/drugInfo.cfm?id=13309.)

Ibuprofen.  (Armstrong Decl. ¶¶ 14-16; Ex. B at 26).

On the morning of October 11, 2007, plaintiff sought emergency medical attention because of "serious pain" in his head and lower back and was seen by defendant, nurse Jerre White.[4]  According to plaintiff's amended complaint and his deposition (Def. Ex. F., Dkt. No. 44-9 at 22, 23, 32), Nurse White refused to examine or assist him, accused him of lying about his medical condition, and caused him to be "locked up" by issuing a misbehavior report.  The amended complaint suggests that Nurse White had made a prior threat to take action against the plaintiff if he came to sick call again.

In her sworn declaration, Nurse White states that, when the plaintiff appeared at Franklin's urgent care center on October 11th, she completed a "full exam" of the patient, and found that his vital signs were normal and that he was not in any kind of distress.  (White Decl. ¶ 1, Dkt. No. 44-11).  She states that plaintiff's complaint was "chronic, but not acute," that he was issued over-the-counter pain medication, and was scheduled to see a doctor.  Plaintiff's medical records corroborate that Nurse White examined the plaintiff and recorded his vital signs. (Ex. B at 25).   Nurse White's contemporaneous progress notes also indicate that the plaintiff was referred for a psychiatric interview, and the social worker concluded he was fine, but manipulative. (Ex. B at 25; Armstrong Decl. ¶ 22).

---

[4] Plaintiff's amended complaint (which does not have numbered paragraphs) erroneously states that he saw Nurse White on October 11, 200**8**; but his attached exhibits make clear that the relevant events started in October 200**7**.  Several of the dates set forth in this factual statement were not specified in the amended complaint, but were determined by reference to other documents included in the record and do not appear to be in dispute.

Nurse White concluded, based on her examination of the plaintiff and review of his prior medical records, that his complaint was not an emergency and should have been addressed in a regular nursing call.  She issued a misbehavior report accusing plaintiff of falsely claiming an emergency and interfering with her regular duties. Nurse White averred that she issued the misbehavior report, not because the plaintiff was complaining of medical problems, but because he was deliberately abusing the facility's emergency sick call policy. (White Declaration ¶¶ 5-9; Ex. B at 25).

Nurse White stated that she did not treat the plaintiff at any time before or after October 11th, implicitly denying the suggestion in the plaintiff's amended complaint that she had previously threatened him with retaliation if he made further sick call visits.  There is no indication in the plaintiff's medical records that he ever had a confrontation with any of the medical staff at Franklin. (Ex. C, Dkt. No. 44-6 at 20; Ex. B, Dkt. No. 44-5 at 21-30).[5]

The Declaration of Carolyn St. Denis[6] (Dkt. No. 44-13) and the disciplinary records from Franklin (Ex. G, Dkt. No. 44-10) confirm that Nurse White's October 11, 2007 inmate misbehavior report resulted in the plaintiff being confined in his regular room, but only until the next morning.  A disciplinary hearing on October 16, 2007 resulted in a guilty disposition and imposition of certain sanctions on the plaintiff that

---

[5] In his deposition, plaintiff claimed that he was threatened with retaliation at one point if he made another sick call request, but could not identify who on the medical staff made that alleged threat.  (Ex. F., Dkt. No. 44-9 at 31).  He also testified that, prior to October 11, 2007, he had not experienced any problems with Nurse White or anyone else with the Department of Corrections.  (Ex. F., Dkt. No. 44-9 at 31).

[6] Carolyn St. Denis is a records coordinator at Franklin. (St. Denis Decl. ¶ 1).

were never implemented.[7]  On October 18, 2007, the Superintendent of Franklin granted plaintiff's appeal, reversed the guilty finding, and vacated the sanctions. (Ex. G at 5).

At some point in this process, the plaintiff apparently showed the staff personal copies of his medical records (which apparently were not in the files of the medical staff at Franklin), corroborating his prior accident in February 27, 2007, and some of the subsequent medical treatment at other institutions. (Ex. G, Dkt. No. 44-10 at 5; Ex. C, Dkt. No. 44-6 at 21-22).  These documents appear in the defendant's exhibit containing plaintiff's grievance documents. (Ex. C at 20-22).  In response to plaintiff's grievance, Nurse Armstrong wrote a memorandum, indicating that there was "no documentation of [plaintiff's] previous injuries in his chart." (Ex. C at 20).

Although Nurse White's misbehavior report against the plaintiff was dismissed within one week, plaintiff's amended complaint suggests that he was deterred from seeking further medical treatment for months because of fear of retaliation from Nurse White or perhaps others on the medical staff.[8]  The plaintiff was scheduled to see a doctor on December 15, 2007, but the appointment was postponed because he was in the special housing unit (SHU) at that time, for reasons unrelated to the merits of this action.

---

[7] The sanctions imposed were 15 days of lost privileges of various kinds.  In his deposition, plaintiff claimed that he "did some of the 15 days" before the Superintendent reversed the decision.  (Ex. F., Dkt. No. 44-9 at 26-27).

[8] In the grievance report attached to the amended complaint, plaintiff alleges that he was threatened by unnamed nurses to leave sick call "or else," which placed him in fear for his safety. (Dkt. No. 10-1 at 5).

6

On December 15th, a nurse in the special housing unit at Franklin saw the plaintiff, who complained of headaches.  The plaintiff said at that time that, unless the nurse could give him Percocet, she had nothing to offer him.  On January 15, 2008, plaintiff, complaining of headaches and low back pain, was examined by a doctor who prescribed Naproxen 500 mg for his discomfort and ordered x-rays.  (Armstrong Decl. ¶¶ 23-26; Ex. B at 22-23).  Plaintiff was transferred to Coxsackie in February 2008; his outgoing medical examination report from Franklin noted "chronic back pain," but "no acute health care issues," and reflected a continuing prescription for Naprosyn 500 mg.[9]  (Ex. B at 21).

As reflected in the attachments to the amended complaint and Exhibit C to the summary judgment motion, plaintiff filed a grievance at Franklin, complaining about denial of appropriate medical attention and alleged threats by the medical staff to deter him from seeking further treatment.  The grievance was denied by the Superintendent of the institution, and then appealed by the plaintiff.  The decision of the Superintendent was upheld by the Central Office Review Committee (CORC) of the Department of Corrections.

## II.   **Summary Judgment**

The amended complaint alleges that defendant White showed deliberate indifference to plaintiff's medical needs by refusing to treat him during his visit to the urgent care center at Franklin on October 11, 2007.  He also accuses Nurse White of

---

[9] Naproxen is the generic name for a commonly-used nonsteroidal anti-inflammatory drug (NSAID).  Naprosyn is one of several brand names for Naproxen.  *See* DailyMed website– http://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?id=8862#nlm34089-3.

issuing an unfounded inmate misbehavior report on the same day, which purportedly deterred him from seeking needed medical care for several months thereafter.

Defendant White has moved for summary judgment on the plaintiff's Eighth Amendment cause of action, arguing that there are no material facts in dispute to support the claim that (1) the plaintiff had a serious medical need that was not met or (2) that defendant was deliberately indifferent to any such medical need.

The defendant construes the amended complaint as alleging that the inmate misbehavior report filed by Nurse White constituted retaliation for the exercise of his purported First Amendment right to demand necessary medical attention.[10]  In support of the summary judgment motion, the defendant argues (1) even if the misbehavior report was unfounded, the defendant received procedural due process in the adjudication of the report; (2) it is doubtful that the First Amendment encompasses a right to demand medical care in a prison; and (3) the misbehavior report did not constitute an "adverse action" which would deter a similarly situated individual of ordinary firmness in seeking necessary medical attention.

Finally the defendant argues that the amended complaint should be dismissed on qualified immunity grounds because (1) even if his claims are accepted as true,

---

[10] The issues raised in the amended complaint relating to the filing of defendant White's inmate misbehavior report against the plaintiff, which he claims effectively deterred him from seeking medical care for several months, could reasonably be considered solely as part of his explicitly-stated Eighth Amendment claim.  *Williams v. Director of Health Services, Dept. of Correctional Services*, 542 F. Supp. 883 (S.D.N.Y. 1982), cited in defendant's amended complaint, as well as *Estelle v. Gamble*, 429 U.S. 97 (1976), considered disciplinary actions against the inmates relating to their medical care only as part of a deliberate indifference claim. However, since the defendant construes the amended complaint to raise a distinct First Amendment/retaliation claim, the court will address it.

plaintiff has failed to establish that the defendant violated his constitutional rights and (2) it was objectively reasonable for the defendant to believe that her conduct did not violate plaintiff's federally protected rights.

### A.    Legal Standard for Summary Judgment

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted).  Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion.  *Id*.  However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

In meeting its burden, the party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying the portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmovant bears the burden of proof at trial, the moving party may show that he is entitled to summary judgment by either (1) pointing to evidence that negates the nonmovant's claims or (2) identifying those portions of the nonmovant's evidence that demonstrate the absence of a genuine issue of material fact.  *Salahuddin v. Goord*,

467 F.3d 263, 272-73 (2d Cir. 2006) (citing *Celotex Corp.*, 477 U.S. at 323).  The

second method requires the movant to identify evidentiary insufficiency, not merely to

deny the opponent's pleadings.  *Id.*

      If the moving party satisfies its burden, the nonmoving party must move

forward with specific facts showing that there is a genuine issue for trial.  *Id.*  "Only

disputes over facts that might affect the outcome of the suit under governing law will

properly preclude summary judgment."  *Salahuddin v. Coughlin*, 674 F. Supp. 1048,

1052 (S.D.N.Y. 1987) (citation omitted). A dispute about a genuine issue of material

fact exists if the evidence is such that "a reasonable [fact finder] could return a verdict

for the nonmoving party."  *Anderson*, 477 U.S. at 248.  In determining whether there

is a genuine issue of material fact, all factual inferences must be drawn in favor of the

nonmoving party. *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (citing

*Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 164 F.3d 736, 742 (2d Cir.

1998)).

      In *Govan v. Campbell*, U.S. District Judge Gary L. Sharpe summarized the

standards for evaluating summary judgment motions involving *pro se* litigants:

> . . . [I]n a *pro se* case, the court must view the submissions by a more lenient
> standard than that accorded to "formal pleadings drafted by lawyers." *Haines v.*
> *Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L.Ed.2d 652 (1972); *see Estelle v.*
> *Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed.2d 251 (1976); *Burgos v.*
> *Hopkins*, 14 F.3d 787, 790 (2d Cir.1994) (a court is to read a *pro se* party's
> "supporting papers liberally, and . . . interpret them to raise the strongest
> arguments that they suggest").  Indeed, the Second Circuit has stated that
> "[i]mplicit in the right to self-representation is an obligation on the part of the
> court to make reasonable allowances to protect *pro se* litigants from inadvertent
> forfeiture of important rights because of their lack of legal training." *Traguth v.*

*Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). . . .

This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment. *Showers v. Eastmond*, 00 CIV. 3725, 2001 WL 527484, at *2 (S.D.N.Y. May 16, 2001). More specifically, Local Rule 7.1(a)(3) of this court specifically provides that "any facts set forth in the [moving party's] Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." Local Rule 7.1(a)(3) further requires that the "non-movant shall file a Statement of Material Fact which mirrors the movant's statement in matching numbered paragraphs and which set forth a specific reference to the record where the material fact is alleged to arise." The courts of the Northern District have adhered to a strict application of Local Rule 7.1(a)(3)'s requirement on summary judgment motions. *Giguere v. Racicot*, 00-CV-1178, 2002 WL 368534, at *2 (N.D.N.Y. March 1, 2002) (*inter alia citing Bundy Am. Corp. v. K-Z Rental Leasing, Inc.*, 00-CV-260, 2001 WL 237218, at *1 (N.D.N.Y. March 9, 2001)).

Furthermore, this Circuit adheres to the view that nothing in Rule 56 imposes an obligation on the court to conduct a search and independent review of the record to find proof of a factual dispute. *Amnesty America v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir.2002). As long as the local rules impose a requirement that parties provide specific record citations in support of their statement of material facts, the court may grant summary judgment on that basis. *Id*. at 470-71.

*Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007).

In this case, although plaintiff received proper notice of his obligation to respond to defendant's motion in accordance with Local Rules (Dkt. No. 44-1), the plaintiff did not file a statement of undisputed material facts in compliance with Local Rule 7.1(a)(3). Consequently, the court may accept the properly supported facts contained in the defendant's Rule 7.1 statement (Dkt. No. 44-2) as true for purposes of this motion. *See Govan v. Campbell*, 289 F. Supp. 2d at 295-96. However, the court will carefully review the entire record in determining if there are any material facts in

dispute.

###### B.    Inadequate Medical Care

###### 1.    Legal Standards

In order to state an Eighth Amendment claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  There are two elements to the deliberate indifference standard.  *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).  The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind.  *Id.* at 184 (citing *inter alia Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

###### a.    Objective Element

In order to meet the objective requirement, the alleged deprivation of adequate medical care must be "sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Determining whether a deprivation is sufficiently serious also involves two inquiries. *Id.*  The first question is whether the plaintiff was actually deprived of adequate medical care. *Id.* Prison officials who act "reasonably" in response to the inmates health risk will not be found liable under the Eighth Amendment because the official's duty is only to provide "reasonable care." *Id.* (citing *Farmer*, 511 U.S. at 844-47).

The second part of the objective test asks whether the purported inadequacy in

the medical care is "sufficiently serious." *Id.* at 280.  The court must examine how the care was inadequate and what harm the inadequacy caused or will likely cause the plaintiff.  *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 32-33 (1993)).  If the "unreasonable care" consists of a failure to provide ***any*** treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003)).  However, in cases such as this one, where the inadequacy is in the medical treatment that was actually afforded to the inmate, the inquiry is narrower. *Id.*  If the plaintiff is receiving ongoing treatment, and the issue is an unreasonable delay or interruption of the treatment, then the "seriousness" inquiry focuses on the challenged delay itself, rather than on the underlying condition alone. *Id.* (citing *Smith*, 316 F.3d at 185).  Thus, the court in *Salahuddin* made clear that although courts speak of a "serious medical condition" as the basis for an Eighth Amendment claim, the seriousness of the condition is only one factor in determining whether the deprivation of adequate medical care is sufficiently serious to establish constitutional liability.  *Id.* at 280.

### b.    Subjective Element

The second element is subjective and asks whether the official acted with "a sufficiently culpable state of mind." *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 300 (1991)).  In order to meet the second element, plaintiff must demonstrate more than a "negligent" failure to provide adequate medical care.  *Id.* (citing *Farmer*, 511 U.S. at 835-37).  Instead, plaintiff must show that the defendant was "deliberately indifferent" to that serious medical condition. *Id.*  Deliberate indifference is equivalent to

13

subjective recklessness. *Id.* (citing *Farmer*, 511 U.S. at 839-40).

In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety.  *Id.* (citing *Chance*, 143 F.3d at 702).  The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference. *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  The defendant must be subjectively aware that his or her conduct creates the risk; however, the defendant may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was "insubstantial or non-existent." *Farmer*, 511 U.S. at 844.  Thus, the court stated in *Salahuddin* that the defendant's belief that his conduct posed no risk of serious harm "need not be sound so long as it is sincere," and "even if objectively unreasonable, a defendant's mental state may be nonculpable." *Salahuddin*, 467 F.3d at 281.

Additionally, a plaintiff's disagreement with prescribed treatment does not rise to the level of a constitutional claim. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001).  Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id.* (citations omitted).  An inmate does not have the right to treatment of his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986).  The fact that plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id.*

Disagreements over medications, diagnostic techniques, forms of treatment, the

14

need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment. *Sonds*, 151 F. Supp. 2d at 312 (citing *Estelle*, 429 U.S. at 107).  Even if those medical judgments amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate.  *Id.  See also Daniels v. Williams*, 474 U.S. 327, 332 (1986) (negligence not actionable under Section 1983).  Thus, any claims of malpractice, or disagreement with treatment are not actionable under Section 1983.

### 2.  Application of Legal Standards

#### a.  Analysis of Purported Factual Disputes

In this case, plaintiff alleges that, when he visited the urgent care center at the Franklin facility on October 11, 2007, defendant White caused him to be "locked up" without examining him or providing him with any assistance.  Defendant's Statement Pursuant to Rule 7.1(a)(3), amply supported by the Declaration of Nurse White and her contemporaneous medical records, negates plaintiff's claims.  The record reflects that the defendant examined the plaintiff, took his vitals, reviewed his prior medical records (which revealed that he was a frequent visitor to sick call and had a doctor's appointment pending), and referred him for a consultation with the mental health staff before concluding that he was in no obvious distress and did not present any medical emergency. (Dkt. No. 44-2, ¶¶ 17-24).

Particularly in light of his failure to respond to defendant's Rule 7.1(a)(3) statement, plaintiff's conclusory suggestion that Nurse White completely refused to provide any medical attention on October 11, 2007 is insufficient to create a dispute of

fact in the face of the sworn declaration and supporting documentary evidence in the record.  *See Benitez v. Pecenco*, 92 Civ. 7670, 1995 WL 444352 at n.5, 1995 U.S. Dist. LEXIS 10431 (S.D.N.Y. July 27, 1995) (plaintiff's conclusory allegation that he was never issued medication was directly contradicted by medical records and was insufficient to create a factual dispute on that issue) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("mere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case")).[11]  While plaintiff may have disagreed with Nurse White's medical judgment as to his condition and the level of care he required, there is no factual support for his claim that he was completely refused medical care.  *See Sonds*, 151 F. Supp. 2d at 312 (citing *Estelle*, 429 U.S. at 107) (disagreements over diagnostic techniques and forms of treatment implicate medical judgments and not the Eighth Amendment).

Plaintiff claims that he was deterred from seeking medical attention at Franklin from October 11, 2007, the date Nurse White issued an inmate misbehavior report against him for abusing emergency sick call, for several months–apparently until January 15, 2008, when he was seen by a prison doctor.  He also alleged that he was warned by unnamed prison officials not to return to the prison medical facility "or

---

[11] See also *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) ("While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' . . . and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account." (citation omitted)).

else," and avoided seeking treatment in fear for his safety. (Dkt. No. 10-1 at 5). However, the declarations and documents filed in support of defendant's summary judgment motion, to which plaintiff did not respond, vitiate these conclusory allegations.

The record shows that plaintiff was seen by the medical staff at Franklin on December 15, 2007, and at that time, he essentially refused treatment unless he was provided Percocet. Plaintiff reacted similarly on the sick call visit on October 9, 2007, when he effectively refused Ibuprofen by threatening to ignore the directions of the medical staff by taking all of his medications at once. (Armstrong Decl. Dkt. No. 44-12, ¶¶ 11-15, 23-24, 26; Ex. B, Dkt. No. 44-5 at 23). *See Jones v. Smith*, 784 F.2d 149, 151-52 (2d Cir. 1986) (plaintiff's history of declining treatment by prison doctors undermined his claim that they were deliberately indifferent in failing to treat his back issues).

Plaintiff did not refute Nurse White's sworn declaration that she saw him only once (on October 11, 2007), and thus could not have made a prior threat to him about the alleged repercussions for returning for further medical attention. Even if the court were to accept as true plaintiff's unsupported allegations that someone threatened to retaliate against him before October 11, 2007 if he sought further treatment, this defendant cannot be liable for such conduct in which she was clearly not personally involved. *See, e.g., Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (personal involvement is a prerequisite to the assessment of damages in a section 1983 case); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). Plaintiff's conclusory and

17

inconsistent allegations that he was effectively deterred by conduct of the defendant from seeking all medical attention from October 11, 2007 until January 15, 2008 is insufficient to create a disputed issue of fact in light of the contrary facts stated in the defendant's sworn declarations and supporting documents.

### b.   Objective Element

As of October 11, 2007, the medical records at the Franklin regarding the plaintiff did not reflect his prior accident and related injuries and indicated that he had a doctor's appointment pending.  The medical staff who previously examined plaintiff on several occasions did not find any objective evidence of serious problems with his back.  The available records further suggested that plaintiff would be satisfied with his treatment only if he were prescribed a more potent pain killer than the medical staff was prepared to provide.  Under those circumstances, and based on her examination of the plaintiff, there is no material issue of fact suggesting that Nurse White unreasonably responded to his medical needs on October 11th when she concluded that (1) he did not require further immediate treatment and (2) he had abused the facility's emergency sick call procedures.  However, even if we accept as true plaintiff's unsupported allegation that the defendant completely refused plaintiff all medical attention on that date and deterred him from seeking needed medical attention for several months, the delay in his treatment did not involve sufficiently serious possible negative consequences to violate his rights under the Eighth Amendment.[12]

---

[12] In his amended complaint, plaintiff cites the *Williams v. Director of Health Services, Dept. of Correctional Services*, 542 F. Supp. 883 (S.D.N.Y. 1982) in support of his cause of action.  The court in *Williams* denied a defendant's motion for summary judgment against an

*Evans v. Manos* suggests how a prison inmate's claim for a delay in medical treatment should be evaluated under the Eighth Amendment:

> "Although a delay in medical care can demonstrate deliberate indifference to a prisoner's medical needs, a prisoner's Eighth Amendment rights are violated only where 'the delay reflects deliberate indifference to a serious risk of health or safety, to a life-threatening or fast-degenerating condition or to some other condition of extreme pain that might be alleviated through reasonably prompt treatment.'"

*Evans v. Manos*, 336 F. Supp. 2d 255, 262 (W.D.N.Y. 2004) (citations omitted). The Second Circuit has not resolved whether actual adverse medical effects are required, as a threshold matter, to state a viable Eight Amendment claim relating to delayed medical care; but has indicated that a plaintiff must at least show that the delay significantly increased the risk for medical injury or similar serious adverse consequences. *Smith v. Carpenter*, 316 F.3d at 188-89, n.14, n.15. The Court in *Smith* also observed, in the post-trial context, that, "although demonstrable adverse medical effects may not be required under the Eighth Amendment, the absence of present physical injury will often be probative in assessing the risk of future harm."

---

inmate who claimed that the Department of Corrections denied him constitutionally adequate medical care for chronic and severe internal bleeding by (1) repeatedly transferring him from one facility to another just as he was about to undergo treatment; (2) failing to advise the transferee prison of his medical needs; and (3) threatening him with disciplinary sanctions for requesting medical assistance for his serious medical problem. The instant case is factually distinguishable from *Williams* on many fronts: (1) plaintiff Brown's medical issues were not serious, as compared to the severe internal bleeding from which Williams suffered; (2) while plaintiff Brown was transferred on several occasions, his complaint focuses on the alleged inadequacy of his treatment in only one facility over a period of, at most, three months; (3) although a few of plaintiff Brown's medical records were apparently not transferred to Franklin, he has sued only Nurse Jerre White, not anyone who was personally involved in or responsible for the transfer of his records from other institutions; and (4) defendant White was involved only in filing one inmate behavior report against the plaintiff, which, as discussed elsewhere herein, did not prevent plaintiff from seeking medical care and did not infringe his constitutional rights.

*Smith v. Carpenter*, 316 F.3d at 188.

The plaintiff's medical records document that, while at Franklin, he, at most, suffered from chronic, but not acute, lower back pain and occasional headaches and dizziness.  He was examined by the medical staff at the facility approximately seven times between his admission in September 2007 and his discharge in February 2008, and no serious underlying medical problems (such as degenerative disk disease) were observed or diagnosed.  On at least two occasions, the plaintiff essentially refused treatment and medication because he wanted more potent pain killers.  His subjective claims of "serious pain," unaccompanied by substantial medical complications are not sufficient to create a factual issue as to whether he was suffering from a "serious," unmet medical need.  *Evans v. Manos*, 336 F. Supp. 2d at 260; *Livingston v. Goord*, 225 F. Supp. 2d 321, 329 (W.D.N.Y. 2002) (collecting cases).

Even assuming plaintiff's conclusory and inconsistent allegations as true, notwithstanding the compelling contrary evidence in defendant's declarations and supporting documents, his access to medical treatment was interrupted for a maximum period of three months–between October 11, 2007 and January 15, 2008.[13]  There is no evidence that this purported delay resulted in any material change in plaintiff's condition or significantly altered his treatment.  The physician who examined the plaintiff in January 2008 ordered x-rays and prescribed Naproxen 500 mg; the more potent pain killers plaintiff sought were not prescribed.

---

[13] The court would emphasize that plaintiff's medical records clearly show that he was seen by a nurse in the SHU on December 15, 2007, at which time, plaintiff refused any treatment unless the nurse could give him Percocet. (Ex. B at 23).

Under these circumstances, the court finds no material fact in dispute that would support a claim that the alleged delay in the treatment of plaintiff at Franklin caused a serious risk of medical harm or extreme pain contemplated by the Eighth Amendment. *See, e.g., Evans v. Manos*, 336 F. Supp. 2d at 261-62 (delay of up to six weeks to treat prisoner who claimed "extreme" back pain, which did not result in substantial harm to plaintiff or significantly change the course of his eventual treatment, was not a serious disruption of his medical care). *See also Benitez v. Pacenco*, 1995 WL 444352 at *3-*4, 1995 U.S. Dist. LEXIS 10431 ("Given plaintiff's refusal to cooperate with his medical care, his sporadic complaints of [back] pain [with no objective evidence that it was severe or excruciating], the extensive record of his treatment, and the complete absence of any credible evidence of a serious medical condition, a reasonable jury could only conclude that plaintiff did not suffer from a serious medical condition."); *Salaam v. Adams*, 9:03-CV-0517, 2006 WL 2827687, at *10, 2006 U.S. Dist. LEXIS 70963 (N.D.N.Y. Sept. 29, 2006) (prisoner's sporadic and moderate complaints of lower back pain, even when considered in conjunction with prisoner's sporadic complaints of gastrointestinal problem, were not sufficiently serious for purposes of Eighth Amendment, as a matter of law).

### c.   Subjective Element

As discussed above, plaintiff's conclusory suggestion that the defendant completely refused to provide him any medical attention on October 11, 2007 is overcome by the defendant's Rule 7.1(a)(3) statement and supporting sworn declaration and documents, which plaintiff did not rebut.  Based on the information

before her, Nurse White's medical judgment that the plaintiff was not suffering from a health emergency and did not require further treatment at that time was indisputably reasonable.  Other than his bald accusations, plaintiff has not responded to the defendant's well-supported motion with any evidence backing his claim that Nurse White acted recklessly, or that she knew of and disregarded an excessive risk to the inmate's health or safety.  He has not done anything to rebut the defendant's sworn declaration, which indicates that she had no intention to cause him serious harm or extreme pain.  *See, e.g., Estelle v. Gamble*, 429 U.S. at 100-101, 106-107 (inmate who alleged doctors did not credit his repeated assertions that severe back pain should preclude him from manual labor did not state a claim for deliberate indifference where the medical staff repeatedly saw and treated him, even if their lack of diagnosis and inadequate treatment constituted malpractice).

Even if one were to accept the plaintiff's unsupported allegations that Nurse White was completely dismissive of his complaints on October 11th, there would be no support for his claim that she acted with deliberate indifference to a serious medical need.  *See, e.g., Savage v. Brue*, 9:05-cv-857, 2007 WL 3047110  at *9, 2007 U.S. Dist. LEXIS 77643 (N.D.N.Y. Oct. 18, 2007) (nurse refused pain medication to an inmate confined in a special housing unit for 48 hours with no mattress who complained of "extreme" back and neck pain due to a recent injury, and advised the inmate that he would need to "adjust to it"; while the nurse may have been negligent in her care, she was not reckless or deliberately indifferent); *Evans v. Manos*, 336 F. Supp. 2d at 261-62, 263 (terminating and postponing, for two more weeks, the

22

medical appointment of a prisoner who claimed "extreme" back pain because he complained about his care did not constitute deliberate indifference where the doctor had no intention of doing the inmate harm).

Plaintiff's primary objection to the course of his treatment at Franklin seemed to be that the medical staff did not prescribe him a more potent pain killer such as Percocet.  As stated above, differences in opinions as to the appropriate treatment clearly do not support a claim that "serious" medical needs were recklessly ignored. *See, e.g., Evans v. Manos*, 336 F. Supp. 2d at 262, 263*) (inmate's opinion that doctor should have prescribed something stronger than Advil and a back brace does not give rise to an issue of fact as to whether his constitutional rights were violated); *Morrison v. Mamis*, 08 Civ. 4302, 2008 WL 5451639, 2008 U.S. Dist. Lexis 106416 (S.D.N.Y. Dec. 18, 2008) (doctor refusing to switch prescription pain killers or allow use of Ben Gay by an inmate complaining of back pain and migraines does not give rise to an deliberate indifference claim), Report and Recommendation adopted by 2009 WL 2168845, 2009 U.S. Dist. Lexis 61772 (S.D.N.Y. July 20, 2009);  *Nelson v. Rodas*, 01CIV7887, 2002 WL 31075804  at *14-*15, 2002 U.S. Dist. LEXIS 17389 (S.D.N.Y. Sept. 17, 2002) (inmate's complaint that the prison refused his request for a CAT scan and consultation with a specialist concerning his back spasms was not the proper basis for an Eighth Amendment claim).

### C.     Retaliation

#### 1.     Legal Standards

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for "adverse action" taken against him by defendants. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citing *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002); *Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997)).  The court must keep in mind that claims of retaliation are "easily fabricated" and thus, plaintiff must set forth non-conclusory allegations. *Id.* (citing *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)).  Finally, even if plaintiff makes the appropriate showing, defendants may avoid liability if they demonstrate that they would have taken the adverse action even in the absence of the protected conduct. *Bennett*, 343 F.3d at 137.

The Second Circuit has defined "adverse action" in the prison context, as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003), *superseded by* 2003 U.S. App. LEXIS 13030 (2d Cir. Feb. 10, 2003)) (omission in original).  This objective test applies even if the plaintiff was not himself subjectively

deterred from exercising his rights. *Id.*[14]

## 2.   Application of Legal Standards

Defendant construes the amended complaint as alleging that her filing of an unfounded inmate misbehavior report against the plaintiff for seeking emergency medical treatment on October 11, 2007 constituted retaliation for his exercise of the purported First Amendment right to demand necessary medical treatment.  The misbehavior report, guilty finding, and sanctions imposed after a disciplinary hearing, were vacated a week later by the Superintendent, without comment.

As the Defendant's Memorandum of Law notes, a prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest,[15] as long as the prisoner is provided with procedural due process.  (Dkt. No. 44-14 at 6-7). *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986).  However, if the defendant

---

[14] Defendant's Memorandum of Law cites several Second Circuit cases, outside of the prison context, which suggest that a plaintiff must establish that alleged retaliatory conduct actually and effectively chilled his First Amendment rights to state a § 1983 action for retaliation for the exercise of such rights.  *See, e.g., Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).  More recent cases such as *Gill v. Pidlypchak*, 389 F.3d at 381-82 make clear that the Second Circuit still applies a strictly objective standard in prison cases, even when the alleged retaliation involves First Amendment rights.

[15] In this case, the minor sanctions imposed on plaintiff implicated no protected liberty interest for which due process protections would have been required. *See  Sandin v. Conner,* 515 U.S. 472, 486 (1995) (rejecting a claim that thirty days in segregated confinement was sufficient to create a liberty interest).  Plaintiff in this case spent a day confined to his room, and at worst, suffered a few days of restricted privileges prior to the reversal of the discipline imposed. Because there was no liberty interest infringed, any claims of unfounded accusations would not be actionable.  *Smith v. Taylor*, 149 Fed. Appx. 12, 13, 2005 WL 2019547 at *1 (2d Cir. 2005). In any event, in this case, there appears to be no issue that the plaintiff received due process through the disciplinary hearing and subsequent appeal to the superintendent. (Higgins Decl. ¶ 9 & Ex. G, Dkt. Nos. 44-3,  44-10; Plaintiff's Deposition, Ex. F, Dkt. No. 44-9 at 24-26).

initiated disciplinary proceedings against plaintiff in retaliation for his exercise of a constitutionally protected right, substantive due process rights are implicated even if the plaintiff were entitled to, and did receive, full procedural due process. *Franco v. Kelly*, 854 F.2d 584, 588-89 (2d Cir. 1988). Any action taken by defendant in retaliation for the exercise of a constitutional right, even if not unconstitutional in itself, states a viable constitutional claim. *Id.*

The court has found no Supreme Court authority as to whether the First Amendment confers upon a prisoner the right to demand necessary medical attention and courts in the Second Circuit have not decided the issue. *See, e.g., Benitez v. Pacenco*, 1995 WL 444352 at *5, 1995 U.S. Dist. LEXIS 10431 (". . . I do not believe that an inmate has a constitutional right to 'repeatedly' complain about his medical ailments . . . ."); *Maxwell v. City of New York*, 272 F. Supp. 2d 285, 299-300 (S.D.N.Y. 2003) (noting the absence of conclusive Second Circuit authority and observing that an inmate's insistence that she receive medical treatment is not "the typical protected speech most commonly considered protected"), *aff'd in part, vacated in part on other grounds*, 380 F.3d 106 (2d Cir. 2004), *opinion supplemented by* 108 Fed. Appx. 10, 12 (2d Cir. 2004) (agreeing with the District Court that "even if her request for medical attention can be considered a constitutionally protected statement," the alleged retaliatory delays in treatment were *de minimis)*. *Cf. West v. McCaughtry* , 971 F. Supp. 1272, 1277 (E.D. Wisc. 1997) (in *dicta*: "If a prisoner were disciplined solely because of his requests for proper medical treatment, it would surely be a constitutional violation.")

26

We will assume, for the purpose of the motion for summary judgment with respect to a retaliation claim, that the First Amendment recognizes an inmate's right to demand necessary medical care or complain about inadequate care.  It is unnecessary to make this specific determination because, even assuming that a constitutional right existed, a retaliation claim fails for two reasons.  First, plaintiff did not rebut defendant's sworn statement that she filed the misbehavior report because "she concluded that Plaintiff had abused emergency sick call," negating any suggestion that plaintiff's constitutionally protected conduct was the substantial motivating factor for her actions.[16]  Second, it is questionable that the misbehavior report constituted an "adverse action," sufficient to meet the standard for retaliation.

### a.    Substantial Motivation

In defendant White's sworn declaration, she states that she "believed, based on my examination and observations, [that] plaintiff was deliberately abusing the emergency sick call policy about which he was aware."  (White Decl. ¶ 9).  The medical records support defendant White's statement.  It is clear from the October 11, 2007 entry that notwithstanding plaintiff's complaints of dizziness, he was oriented in three spheres; his blood pressure, pulse, respiratory rate, and temperature were normal, and he was in no obvious distress. (Ex. B at 25).  Nurse White further states that

---

[16] Although defense counsel does not advance this argument in his memorandum of law, defendant While clearly includes this statement in her sworn declaration.  As this court found above, based on the information before her, Nurse White's conclusion that plaintiff was not suffering from a medical emergency was indisputably reasonable.  Accordingly, her filing of a misbehavior report, based on a violation of the prison regulations governing emergency sick call, was also reasonable, and, thus, not motivated by an intent to retaliate against plaintiff for the exercise of any constitutional right.

plaintiff was a "frequent visitor for various complaints," and on the medical record there is stamped language indicating that the inmate was advised of the proper procedures for sick call and emergencies. *Id.*

Defendant alleges that the misbehavior report was filed for what she believed was a violation of facility rules, based upon a medical judgment, and not in retaliation for plaintiff's medical complaints.  The conclusory suggestion of retaliation by the plaintiff is not sufficient to overcome the declaration of Nurse White and supporting documents.  The record strongly supports the position that Nurse White made a considered and sincere medical judgment that the plaintiff did not require emergency medical attention on October 11, 2007 and that she did not harbor a "retaliatory" motivation.  The Superintendent's dismissal of the disciplinary charges, while not explained, could be attributed to the plaintiff's disclosure of medical records corroborating his claims of a prior injury, which were not in his medical files at Franklin as of October 11th.  Thus, plaintiff cannot show that the issuance of the misbehavior report was "substantially motivated" by plaintiff's constitutionally protected conduct.

### b.    Adverse Action

Defendant also argues that the misbehavior report could not be considered an "adverse action."  Unfortunately, defendant's basis for this argument, that the misbehavior report against plaintiff could not be considered an "adverse action" because it did not actually deter him from exercising his First Amendment rights is, as noted in footnote 14 above, inconsistent with Second Circuit authority.  We have

rejected plaintiff's unsupported claim that the misbehavior report, for which,

ultimately, he was confined in his cell for about 24 hours, deterred *him* from seeking

further medical attention for several months (see Section II. B. 2. a., above).

However, the issue is not whether this plaintiff was actually deterred from

seeking medical help, but whether the initiation of such disciplinary action would

have deterred an inmate "of ordinary firmness" from demanding medical attention at

least for the week or so before the Superintendent vacated the disciplinary charges.

Notwithstanding the difference in the standard, this court agrees that plaintiff did not

suffer an "adverse action.

In *Bartley v. Collins,* 95 Civ. 10161, 2006 WL 1289256 at *7, 2006 U.S. Dist.

LEXIS 28285 (S.D.N.Y. May 10, 2006), the court held that misbehavior reports which

resulted in loss of privileges, but not significant time in keeplock[17], were *de minimis*

and did not constitute adverse action.  Plaintiff's "full bed" restriction for one day and

minor privilege restrictions are more akin to the *de minimis* deprivations that have not

been found to constitute adverse action.  Thus, defendant's "implied" cause of action

for retaliation may be dismissed.

### D.    Qualified Immunity

The court also finds that even if it could somehow be determined that the

defendant's actions were somehow retaliatory, defendant would be entitled to

qualified immunity in any event.

---

[17] "Keeplock" is a form of disciplinary confinement where the inmate is confined to his own cell for the duration of the disciplinary sanction. *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989).

### 1.   Legal Standards

In *Delisser v. Goord*, then Magistrate Judge Gary L. Sharpe summarized the

legal standards regarding qualified immunity of public employees:

> Qualified immunity protects government officials who perform discretionary functions in the course of their employment. It shields them from liability for money damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). . . .

> The question of whether qualified immunity will protect a public official depends upon " 'the objective legal reasonableness' of the action assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987) (citations omitted). Furthermore, the contours of the right violated must be sufficiently clear that a reasonable official might understand that his actions violate that right. *Id*. at 640, 107 S. Ct. at 3039; [*Warren v.*] *Keane*, 196 F.3d 330] at 332 [(2d Cir. 1999)]. In other words, "in evaluating whether a right was clearly established at the time a § 1983 defendant acted [the court must determine]: '(1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and, (3) whether under pre-existing law a reasonable defendant official would have understood that his or her acts were unlawful.'" *African Trade & Information Center, Inc., v. Abromaitis*, 294 F.3d 355, 360 (2d Cir. 2002). *See also*, *Charles W. v. Maul*, 214 F.3d 350, 360 (2d Cir. 2000).

*Delisser v. Goord*, 9:02-cv-073, 2003 WL 133271 at *2, 2003 U.S. Dist. LEXIS 488

(N.D.N.Y. Jan. 15, 2003)

### 2.   Application of Legal Standards

Defendant has invoked qualified immunity with respect to the plaintiff's claim

for deliberate indifference to his serious medical needs under the Eighth Amendment,

arguing that, even accepting plaintiff's allegations as true, no such constitutional

violation was established.  Based on the clear findings above, the court concludes that the qualified immunity argument regarding the Eighth Amendment claim need not be addressed.

The court will, however, address the invocation of qualified immunity by the defendant with respect to the imputed First Amendment/retaliation claim as an additional basis for dismissal.  As discussed in Section II. C. 2. above, at the time of defendant's conduct in this case, inmates did not have a "clearly established right" under the First Amendment to demand or complain about medical care.  The Second Circuit has not decided the issue and the court has found no other Second Circuit or Supreme Court precedent that would, with reasonable specificity, clearly support such a right.  A reasonable state employee in the defendant's position would not have understood that her acts on October 11, 2007 might have unlawfully abridged the First Amendment rights of the defendant.  Defendant White would, therefore, also be entitled to the protection of qualified immunity with respect to a imputed retaliation claim.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendant White's motion for summary judgment (Dkt. No. 44) be **GRANTED** and the complaint **DISMISSED IN ITS ENTIRETY** and it is;

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT**

**TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE**

**APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28

U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated:  February 18, 2010

Hon. Andrew T. Baxter
U.S.  Magistrate Judge